In the matter of the Steamboat Virginia.

## NEW YORK CIRCUIT — IN CHAMBERS.
### MAY 5, 1845.
### Before EDMONDS, Circuit Judge.

### In the matter of THE STEAMBOAT VIRGINIA.

A theater erected on the deck of a steamboat, for the purpose of being transported from place to place, for exhibition, and conveying the performers and theatrical "properties," is part of the vessel, within the meaning of 2 R. S. 405 § 1; and the vessel is liable to attachment for the price of materials used in constructing the theater.

The object for which a vessel is designed is a material consideration in granting an attachment under that enactment.

H. W. HUNT & Co., upon petition, etc., verified under 2 R. S. 405, § 1, obtained an attachment against the steamboat Virginia, her tackle, etc., for a bill of lumber alleged to have been "contracted by Driggs, the master, or agent, and furnished for the steamer."

*Franklin Brown*, for the master, now moved to discharge the attachment, upon affidavits showing the lumber was not purchased by him, as master, agent, or owner of the vessel, but on his own personal responsibility, on a credit unexpired; that it had been applied in no way toward the fitting or furnishing of the vessel, but solely to the erection on board said vessel of a floating theater, known as the "Temple of the Muses," the ownership of which was separate and distinct from that of the vessel, of which it constituted no part, not being fastened into, but screwed only to the deck; and that the vessel had been chartered, by an association of persons, to carry on the theater, etc., for a term of years; and he insisted —

1. That the personal assumption of the debt, by Driggs and his associates, was a waiver of any lien against the vessel.

2. That the steamer is not a vessel, within the meaning of the statute, which contemplates those intended for freight and passengers, only, especially when it is shown the ownership of

the vessel and theater are distinct, and the theatrical portion removable, as a fixture, and which the vessel is only chartered to carry. (5 Wend. 512; id. 564.)

3. The lumber did not enter into the construction of, or toward, fitting up the vessel, but the theater.

4. Driggs was not empowered, either as master, agent, or otherwise, to bind the owner or vessel. (20 Wend. 183.)

5. That "Hunt & Co." was not a sufficient designation of the attaching creditors.

*W. W. Campbell*, for attaching and intervening creditors, read affidavits contradicting all the material allegations, and tending to show the ownership of the vessel and theater to be the same, and the theater to be so constructed as to have become parcel of the vessel.

*The Circuit Judge* decided that all the other facts stated by the debtor had been so fully denied by the affidavits of the attaching creditors, that there was no question left for his decision, except that whether the erection of the theater on the hull of the vessel, was any thing connected with "the building, repairing, fitting, furnishing or equipping, such vessel," within the language of the statute.

The very various uses to which vessels might be, and have been, applied since the introduction of steam, deprives the question of every thing like a general rule, except this, that an attachment will lie for materials and labor furnished for the purpose of fitting the vessel for the use for which she is intended.

And, in these cases, it therefore becomes material to inquire whether the vessel is intended for a passage boat, for freight, for towing, or for any other purpose contemplating her use as a vessel, to be moved from one place to another.

In this case, the vessel has her hull and machinery, and is so constructed that she can be, and it is intended she shall be, moved from port to port, for the purpose of transporting her theater and its properties. And the materials and labor, com-

prised in the creditors' claim, were furnished to aid this very purpose.

Motion to discharge the attachment denied.